DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Michael D. Stallings, appeals the judgment of the Summit County Court of Common Pleas denying his petition for post-conviction relief. This Court affirms.
 I. {¶ 2} Appellant was convicted and sentenced to death in 1998 for the aggravated murder of Rolisha Shepherd during the commission of aggravated robbery and aggravated burglary. A detailed description of Appellant's crime was given in State v.Stallings (2000), 89 Ohio St.3d 280, which affirmed Appellant's death sentence. Appellant's attempts to obtain post-conviction relief pursuant to R.C. 2953.21 were unsuccessful. See State v.Stallings (2000), 90 Ohio St.3d 1404. Thereafter, Appellant filed a federal habeas corpus claim. While that case was pending, the U.S. Supreme Court decided Atkins v. Virginia (2002),536 U.S. 304. In Atkins, the Court held that the Eighth Amendment prohibits the execution of mentally retarded persons. Id. at 321. Appellant then filed a successor post-conviction petition asserting that he is mentally retarded. The federal court dismissed Appellant's habeas petition without prejudice to allow him to litigate his Atkins claim in state court.
 {¶ 3} Appellant was granted an evidentiary hearing on hisAtkins claim by the trial court. The trial court heard evidence on August 28, 2003 and September 4, 2003. Subsequently, the trial court denied Appellant's petition on January 16, 2004, finding that Appellant had failed to establish that the onset of his significantly subaverage intellectual functioning and significant limitations in two or more adaptive skills occurred before Appellant reached the age of 18. Appellant timely appealed, raising one assignment of error.
 II. ASSIGNMENT OF ERROR
"The trial court committed clear error when it denied appellant relief on his claim under Atkins v. Virginia, 536 U.S. 304
(2002). Appellant's death sentence violates the constitution because he is in fact mentally retarded. U.S. Const. Amends. VIII, XIV; Ohio Const. Art. 1, §§ 9, 16."
 {¶ 4} In his sole assignment of error, Appellant argues that the trial court erred when it found that Appellant did not establish the onset of mild mental retardation by age 18. We disagree.
 {¶ 5} We begin by noting that a trial court has discretion to grant or deny a petition for post-conviction relief. State v.Elkins, 9th Dist. No. 21380, 2003-Ohio-4522, ¶ 5. As such, this court will not reverse the trial court's decision absent an abuse of discretion. Id. Abuse of discretion requires more than simply an error in judgment; it implies unreasonable, arbitrary, or unconscionable conduct by the court. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219.
 {¶ 6} In 2002, the U.S. Supreme Court ruled that executing the mentally retarded violated the Eighth Amendment of the U.S. Constitution. See Atkins v. Virginia (2002), 536 U.S. 304. However, Atkins did not set forth the procedures to be utilized in making the determination of whether an individual is mentally retarded. However, following Atkins, the Ohio Supreme Court delineated the procedures applicable to a claim of mental retardation. See State v. Lott, 97 Ohio St.3d 303,2002-Ohio-6625. The Court set forth three requirements that must be met before a finding of mental retardation could be made. Those requirements are as follows:
"(1) significantly subaverage intellectual functioning,
"(2) significant limitations in two or more adaptive skills, such as communication, self-care, and self-direction, and
"(3) onset before the age of 18." Id. at ¶ 12.
 {¶ 7} The Court went on to hold that the defendant bears the burden of establishing that he is mentally retarded by a preponderance of the evidence. Id. at ¶ 21. The Court noted that most statutes prohibiting the execution of the mentally retarded require a showing that the individual's IQ is below 70. As such, a rebuttable presumption is created that a defendant is not mentally retarded if his IQ is above 70. Id. at ¶ 12. It is with this general framework that we examine the decision of the trial court.
 {¶ 8} The trial court first determined that Appellant's IQ was found to be above 70 on several different occasions. Therefore, a rebuttable presumption arose that Appellant was not mentally retarded. The trial court went on to find that this presumption was rebutted with regard to the first and second prong of the test set forth by Lott. However, the trial court found that Appellant had not rebutted the presumption with regard to establishing the onset of mental retardation before the age of 18.
 {¶ 9} Neither party contests that the trial court accurately determined that Appellant established that he currently has significantly subaverage intellectual functioning and significant limitations in two or more adaptive skills. However, Appellant contends that he produced sufficient evidence to prove by a preponderance of the evidence that the onset of his mental retardation occurred before the age of 18.
 {¶ 10} On his behalf, Appellant presented two experts at the trial court evidentiary hearing. Dr. Luc LeCavalier testified on Appellant's behalf as follows. LeCavalier administered the Wechsler Adult Intelligence Scale, Third Edition ("WAIS-III") to determine Appellant's IQ. Appellant's composite full scale IQ was found to be 74. LeCavalier noted that the WAIS-III has a standard error of measurement of four. He explained that this meant that Appellant's IQ could be as low as 70 and as high as 78. LeCavalier also administered the Scales of Independent Behavior-Revised ("SIB-R") to determine whether Appellant's adaptive skills were deficient. He went on to testify that Appellant was deficient in all three major domains tested by the SIB-R and was deficient in 12 of the 14 subcategories that were tested. All of these tests were administered when Appellant was 26 years old. LeCavalier admitted that the only IQ test that was performed prior to Appellant turning 18 indicated that Appellant's full scale IQ was 76. However, the standard error of measurement for the test administered when Appellant was 16 years old was six. Therefore, Appellant's IQ could have been as low as 70 and as high as 82. Finally, LeCavalier was asked whether Appellant's mental retardation was present before the age of 18. He responded that "there's a lot of information that suggests that the deficits were present in the period of development."
 {¶ 11} However, under cross-examination, his testimony was equivocal as to whether Appellant was mentally retarded, stating, "it's impossible for me to rule out mental retardation, and I think it would be unethical to say that with 100 percent certainty that he does or does not have mental retardation." Further, he indicated that Appellant's IQ was also tested when he was 21 years old, and those results placed Appellant's IQ in the range of 70 to 82 as well. LeCavalier admitted that Appellant was not classified as mentally retarded as a result of the IQ test he was given at the age of 21. LeCavalier also admitted that Dr. Bendo, who was called to testify on Appellant's behalf at his original trial, did not classify Appellant as mentally retarded. As such, LeCavalier testified that despite IQ tests at the age of 16, 21, and just prior to trial, Appellant was never classified as mentally retarded.
 {¶ 12} Dr. John Fabian also testified on behalf of Appellant at the trial court evidentiary hearing. He administered an IQ test to Appellant, which resulted in a full scale IQ of 72. He went on to testify that the standard error of measurement for the test he administered is four, leading to an IQ ranging from 68 to 76 based upon his examination of Appellant. He also testified that Appellant had major deficits in his adaptive functioning. These included having a difficult time having appropriate interpersonal relationships, developing appropriate work skills, and lacking functional academic skills. Additionally, Dr. Fabian testified that Appellant was never specifically tested for mental retardation before the age of 18. He stated that upon his review of Appellant's IQ test that was performed when Appellant was 16 years old that Appellant definitely had adaptive behavior deficits prior to the age of 18.
 {¶ 13} However, on cross-examination regarding whether Appellant's retardation was present before the age of 18, Dr. Fabian admitted that "[n]o one will ever know what [Appellant's] IQ was at that point[.] Further, he acknowledged that his conclusion was simply that mental retardation could not be ruled out.
 {¶ 14} At the conclusion of the evidentiary hearing, the trial court also indicated that it would review the entire record for evidence relevant to the court's determination of whether Appellant had met his burden in demonstrating mental retardation. As such, the trial court was left with conflicting testimony. Both experts at the evidentiary hearing testified that Appellant met all three prongs of the test developed by Lott. However, both admitted that the only IQ test administered to Appellant before age 18 indicated that he was not mildly mentally retarded, returning an IQ ranging from 70 to 82 once a standard error measurement is included. Further, the experts indicated that Appellant was tested on three prior occasions; the testing when Appellant was 16 years old, the testing when Appellant was 21 years old, and the testing done at the time of Appellant's trial in order to present evidence of mitigating factors. None of the three doctors who had tested Appellant prior to Dr. Fabian and Dr. LeCavalier concluded that Appellant was mentally retarded.
 {¶ 15} As a result, we cannot conclude that the trial court acted in an arbitrary, unreasonable or unconscionable manner. The only scientific evidence presented to the trial court indicated that Appellant's IQ was above 70. Further, neither expert could state that the onset of Appellant's mental retardation was before the age of 18. Accordingly, Appellant's sole assignment of error is overruled.
 III. {¶ 16} The judgment of the Summit County Court of Common Pleas denying Appellant's petition for post-conviction relief is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Slaby, P.J., Batchelder, J., concur.