DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant appeals from the judgment of the Summit County Court of Common Pleas that denied his petition for post-conviction relief. This Court affirms.
 I. {¶ 2} On September 12, 1996, appellant was convicted of one count of attempted murder with a firearm specification; one count of murder with a firearm and aggravated circumstances specifications; and one count of aggravated murder, with a firearm and two aggravated circumstances specifications. The convictions arose from shootings of three persons, two of whom died. The substantive facts underlying these convictions were recounted several times, including once by this Court. See Statev. White (June 16, 1999), 9th Dist. No. 19040. Appellant was sentenced to death on October 31, 1996 on the aggravated murder charge. State v. White (Oct. 31, 1996), C.P. No. CR 96 01 0059.
 {¶ 3} On December 2, 1996, appellant filed a direct appeal to the Ohio Supreme Court, which affirmed his conviction and sentence. State v. White (1999), 85 Ohio St.3d 433.[1] In its independent review of the jury's finding of aggravating circumstances to support the death sentence, the Supreme Court determined, inter alia, that the evidence supported a finding that appellant possessed the purpose to kill the victims. The Court also concluded that appellant had failed to prove mental retardation as a mitigating factor, by a preponderance of the evidence. Id. at 456. While the defense's psychologist, Dr. James Eisenberg, determined that appellant was mildly mentally retarded with an IQ of 63, the rebuttal witness, Dr. Yossef Ben-Porath, disagreed with Dr. Eisenberg's mental retardation diagnosis and concluded that appellant had an antisocial personality disorder. Dr. Ben-Porath reasoned that the results of the tests[2]
upon which Dr. Eisenberg based his diagnosis were invalid because appellant had been uncooperative and had malingered. Id. at 455. The United States Supreme Court later denied his petition for writ of certiorari. Ohio v. White (1999), 528 U.S. 938.
 {¶ 4} In the interim, on October 16, 1997, appellant filed a post-conviction petition with the Summit County Court of Common Pleas. The court denied the petition. State v. White (Mar. 20, 1998), C.P. No. CR 96 01 0059. Appellant appealed the denial of the post-conviction motion to this Court, and we affirmed the trial court's judgment. State v. White (June 16, 1999), 9th Dist. No. 19040. The Ohio Supreme Court declined jurisdiction over appellant's appeal from this affirmance. State v. White
(1999), 87 Ohio St.3d 1418.
 {¶ 5} On October 2, 2000, appellant filed a petition for habeas corpus in the United States District Court of the Northern District of Ohio. On July 30, 2003, the federal district court denied appellant's habeas corpus action. White v. Mitchell
(N.D.Ohio, July 10, 2003), No. 1:00-CV-00251-PRM. Appellant then appealed this denial to the United States Sixth Circuit Court of Appeals.
 {¶ 6} While appellant's habeas corpus claim was pending, the United States Supreme Court decided Atkins v. Virginia (2002),536 U.S. 304, which prohibited the execution of mentally retarded convicted criminal defendants. On July 12, 2002, appellant filed a successive state post-conviction petition, this time asserting that he was mentally retarded and not eligible for execution pursuant to Atkins. The federal court stayed appellant's habeas corpus proceedings pending the disposition of this post-conviction petition.
 {¶ 7} Discovery was held, and the trial court appointed experts. The trial court held evidentiary hearings on December 10, 2003, January 26-27, 2004, and April 19, 2004. In a judgment entry dated February 28, 2005, the court denied appellant's petition, finding that appellant had failed to establish by a preponderance of the evidence that he had significant limitations in adaptive skills and that these limitations existed prior to the age of 18. This appeal followed.
 {¶ 8} Appellant timely appealed, asserting two assignments of error for review.
 II. FIRST ASSIGNMENT OF ERROR
"THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT RELIEF ON HIS CLAIM UNDER ATKINS V. VIRGINIA, 536 U.S. 304, 122 S.CT. 2242
(2002). APPELLANT'S DEATH SENTENCE VIOLATES THE CONSTITUTION BECAUSE HE IS IN FACT MENTALLY RETARDED."
 {¶ 9} In his first assignment of error, appellant argues that his capital sentence violates the ban on cruel and unusual punishment in the Eighth Amendment to the United States Constitution, and Article 1, Sections 9-10 of the Ohio Constitution, as set forth in Atkins, 536 U.S. 304. This Court disagrees.
 {¶ 10} Initially, we note the appropriate standard of review. This Court reviews a trial court's grant or denial of a petition for post-conviction relief pursuant to Atkins under an abuse of discretion standard. State v. Stallings, 9th Dist. No. 21969,2004-Ohio-4571, at ¶ 5. An abuse of discretion implies more than an error in judgment; it connotes unreasonable arbitrary, or unconscionable conduct on the trial court's part. Id., citingBlakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 11} In Atkins, the United States Supreme Court barred the execution of mentally retarded criminal defendants as a violation of the Eighth Amendment's cruel and unusual punishment prohibition. 536 U.S. at 321. The Ohio Supreme Court later set forth a three-prong standard for the determination of whether a convicted defendant who faces the death penalty is mentally retarded: "1) significantly subaverage intellectual functioning, (2) significant limitations in two or more adaptive skills, such as communication, self-care, and self-direction, and (3) onset before the age of 18." State v. Lott, 97 Ohio St.3d 303,2002-Ohio-6625, at ¶ 12.[3] The convicted defendant bears the burden of demonstrating, by a preponderance of the evidence, that he or she is mentally retarded. Id. at ¶ 21. A burden of proof by a preponderance of the evidence has been explained as follows:
"The most acceptable meaning to be given to the expression,proof by a preponderance, seems to be proof which leads the jury to find that the existence of the contested fact is moreprobable than its nonexistence. * * * [A] preponderance of evidence means the greater weight of evidence. * * * The greater weight may be infinitesimal, and it is only necessary that it be sufficient to destroy the equilibrium." (Emphasis added; citations and quotations omitted.) State v. Stumpf (1987),32 Ohio St.3d 95, 102.
Furthermore, a rebuttable presumption of the absence of mental retardation arises if the defendant's IQ is above 70. Lott at ¶ 12.
 {¶ 12} The Court in Lott also observed that the existence of mental retardation in a criminal defendant is a factual issue to be resolved by the trial court. Lott at ¶ 9. This observation reinforces the long-standing rule of law that an appellate court is to give deference to the trial court's findings of fact when reviewing a post-conviction petition. SeeState v. Burdette (May 16, 1996), 8th Dist. No. 69776, citingState v. Jolly (June 24, 1993), 8th Dist. Nos. 62380 63212. The Court in Lott specifically provided:
"The three-part test defining mental retardation, as cited inAtkins, provides the trial court with the constitutional standard for reviewing the evidence. In considering an Atkins
claim, the trial court shall conduct its own de novo review of the evidence in determining whether the defendant is mentally retarded. The trial court should rely on professional evaluations of [the defendant's] mental status, and consider expert testimony, appointing experts if necessary, in deciding this matter. The trial court shall make written findings and set forth its rationale for finding the defendant mentally retarded or not mentally retarded." (Emphasis added.) Lott at ¶ 18. See, also,Tall Pines Holdings, Ltd. v. Testa, 10th Dist. No. 04AP-372,2005-Ohio-2963, at ¶ 22 (De novo review means "an independent review of the evidence").
 {¶ 13} The definitions of "mental retardation," upon which the Ohio Supreme Court relied in adopting as its standard in theLott opinion, were accepted by the United States Supreme Court in Atkins. These definitions are from the American Association on Mental Retardation and the American Psychiatric Association, and provide the following:
"`Mental retardation refers to substantial limitations in present functioning. It is characterized by significantly subaverage intellectual functioning, existing concurrently with related limitations in two or more of the following applicable adaptive skill areas: communication, self-care, home living, social skills, community use, self-direction, health and safety, functional academics, leisure, and work. Mental retardation manifests before age 18.' Mental Retardation: Definition, Classification, and Systems of Supports 5 (9th ed. 1992).
"The American Psychiatric Association's definition is similar: `The essential feature of Mental Retardation is significantly subaverage general intellectual functioning (Criterion A) that is accompanied by significant limitations in adaptive functioning in at least two of the following skill areas: communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety (Criterion B). The onset must occur before age 18 years (Criterion C). Mental Retardation has many different etiologies and may be seen as a final common pathway of various pathological processes that affect the functioning of the central nervous system.' Diagnostic and Statistical Manual of Mental Disorders 41 (4th ed. 2000). `Mild' mental retardation is typically used to describe people with an IQ level of 50-55 to approximately 70. Id., at 42-43."Atkins, 536 U.S. at 309. See, also, R.C. 5123.01.
 {¶ 14} In the instant case, three experts were employed, and both sides stipulated to each expert's credentials and qualifications. Dr. John Fabian testified as the State's forensic expert. Dr. David Hammer testified on behalf of the defense. The experts conducted an IQ examination of appellant together in July 2003. Dr. Fabian administered on appellant both the Weschler Adult Intelligence Scale (WAIS-III) and the Wide Range Achievement Test (WRAT-III), and appellant registered at a full scale IQ of 52. Both experts were satisfied that the IQ score of 52, as established by the WAIS-III, was authentic and corroborated by the WRAT-III and also by the surrounding circumstances. The trial court found, that, even accounting for a standard error of measurement of five points, appellant satisfied the first prong of the forensic definition of mental retardation, i.e., significantly sub-average intellectual functioning. SeeLott at ¶ 12. Thus, the issue on appeal does not concern the finding of mental retardation with respect to the first prong of the standard; it is the court's finding regarding the second and third prongs that appellant challenges.
 {¶ 15} In its judgment entry, the trial court considered but ultimately disagreed with the results of the Scales of Independent Behavior Revised test (SIB-R),[4] the test administered to determine the second prong, significant limitations in two or more adaptive skills, such as communication, self-care and self-direction. Both experts in this case concluded with a reasonable degree of psychological certainty that appellant's SIB-R score was consistent with a mild mental retardation diagnosis, and the court acknowledged that appellant's SIB-R full-scale score of 57 was clearly in the mental retardation range. However, the court found crucial various aspects of the SIB-R test "that tend[ed] to dilute and compromise the probative value of the adaptive behavior test score." The trial court concluded, "the score adjustment, in the face of [the] concrete and reliable testimony [of appellant's former girlfriend, Heather Kawczk], are meager at best," that "[i]t is not so much that Dr. Hammer's testimony lacks credibility, as it is that the ingredients for the test are patently at odds with the credible testimony of Kawczk."
 {¶ 16} Kawczk testified at the evidentiary hearing about appellant and his behavior during the time that the two lived together prior to the crimes. Dr. Hammer later incorporated her answers into the scoring of the SIB-R test and derived an adjusted score, which he testified supported a mild mental retardation diagnosis. However, Kawczk testified as follows: appellant could drive a car, and obeyed traffic signals and rules; appellant would drive her to and from school; the two would have conversations on the phone; appellant was quite popular in school, they attended school events together, and appellant was quite social with other people and could carry on conversations; appellant helped Kawczk buy a car that he had found himself and discussed with the car salesman; appellant was clever enough to hide a romantic relationship with another woman while he was dating Kawczk; appellant had fathered several children with other women, and often spent time and interacted with the children and bought them clothes; appellant wrote Kawczk legible letters while he was in jail; appellant had signed the paperwork for an apartment for the two of them; appellant taught Kawczk how to play various card games; appellant maintained a job as a nurse's aide; appellant could play the game Mortal Kombat; and appellant had hooked up cable television and was able to monitor and change the oil in Kawczk's car.
 {¶ 17} The author of the SIB-R test, Bradley Hill, was appointed by the court after the evidentiary hearing to testify as to the background and validity of the SIB-R. Hill was one of four authors who developed the SIB-R test. Hill testified that the information gathered about an individual's behavior is primarily obtained from third-party informants. In this case, the informants were appellant's mother, Shirley, his sisters, Erica and Keisha, and his brother, Eric.[5] Kawczk's testimony was also used by Dr. Hammer. Notably, Dr. Fabian admitted that they had used appellant himself as an informant for the test; this, when Hill had testified that research exists from which one can conclude that it is not advisable to interview the subject of the test directly. The trial court also took issue with the fact that some of the relatives' answers to the SIB-R questions were based on conjecture. Indeed, with respect to some of the questions, the informants could not provide an answer because either appellant had not had an opportunity to perform the skill tested, or they had not seen appellant perform the skill. Furthermore, the trial court found problematic the fact that Dr. Hammer scored the SIB-R test alone, and thus the score "[was] more the product of Dr. Hammer's judgment than the two experts either together, or separately."
 {¶ 18} Evidence was also presented that one of appellant's teachers had stated that appellant was "pretty smart if he put his mind to it," and appellant's mother had stated that she believed appellant's poor performance in school was also a product of appellant's laziness. While Kawczk's testimony revealed that appellant had very little problem with basic grooming skills, Dr. Fabian had concluded that appellant's grooming needs were difficult to extremely difficult for appellant to perform. Thus, the trial court was faced with conflicting testimony, and, the trial court, as the finder of fact, was in the best position to resolve that conflict.
 {¶ 19} Appellant argues that the trial court's reliance on Kawczk's lay witness testimony "disregards the Atkins andLott decisions which do not support the conclusion that the trial court can render such an opinion based on its own preference for lay testimony." What appellant essentially asks this Court to do is to read into the Lott decision a requirement that the trial court issue a decision in accordance with expert opinion. However, that is not what the Ohio Supreme Court provided for in Lott. The Court simply stated that "[t]he trial court should rely on professional evaluations of [a petitioner's] mental status, and consider expert testimony, appointing experts if necessary in deciding this matter." (Emphasis added.) Id. at ¶ 18. Moreover, the Court did not prescribe a trial court, as the finder of fact, from relying on other evidentiary materials probative of the issue. Notably,
"[t]he adaptive behavior criteria are exceedingly subjective. * * * Although experts may offer insightful opinions on the question of whether a particular person meets the psychological diagnostic criteria for mental retardation, the ultimate issue of whether this person is, in fact, mentally retarded for purposes of the Eighth Amendment ban on excessive punishment is one for the finder of fact, based upon all of the evidence and determinations of credibility. FN 30.
"30 See Kansas v. Crane, 534 U.S. 407, 413, 122 S.Ct. 867,151 L.Ed.2d 856 (U.S.Kan. 2002) (noting that `the science of psychiatry, which informs but does not control ultimate legal determinations, is an ever-advancing science, whose distinctions do not seek precisely to mirror those of the law'); Williams,
831 So.2d at 859 (in determining Atkins claim, `the trial court must not rely so extensively upon this expert testimony as to commit the ultimate decision of mental retardation to the experts')." Ex parte Briseno (Feb. 11, 2004), 135 S.W.3d 1, 8.
Moreover, evidentiary matters are well within a trial court's discretion, State v. Brown, 9th Dist. No. 04CA008510,2005-Ohio-2141, at ¶ 14, and the court may accept or reject any part of an expert witness' testimony. See McKay Machine Co. v.Rodman (1967), 11 Ohio St.2d 77, 82; Noll v. Noll (June 7, 2000), 9th Dist. No. 98CA007042.
 {¶ 20} The United States District Court for the Northern District of Ohio has aptly articulated the role and relationship of expert opinion in a trial court's determination:
"Courts have considered the balance between expert testimony of mental incapacity and lay testimony of capacity. A defendant is not entitled to a judgment of [incapacity] simply because he offers expert testimony on the issue of insanity and the Government attempts to rebut it without any expert witnesses.The expert's opinion, even if uncontradicted, is notconclusive. At the same time, it may not be arbitrarily ignored, and some reason must be objectively present for ignoring expert opinion testimony. Objective reasons for ignoring an expert report include: (1) the correctness or adequacy of the factualassumptions on which the expert opinion is based; (2) possible bias in the expert's appraisal of the defendant's condition; (3) inconsistencies in the expert's testimony, or material variations between experts; and (4) the relevance and strength of thecontrary lay testimony." (Emphasis added; Internal citations omitted.) Lagway v. Dallman (N.D.Ohio 1992), 806 F.Supp. 1322,1340.
The District Court stated this in the context of mental capacity or competency to stand trial. This Court recognizes that competency to stand trial and mental retardation for the purposes of Atkins are legally distinct determinations. However, we find the foregoing general discussion about the consideration of expert and lay opinion helpful and applicable to the instant case.
 {¶ 21} The trial court in this case was aware of the guidelines set forth by the Lott decision, as is reflected in its judgment. The court's judgment was thorough and well reasoned, and also reflected the court's painstaking efforts to issue a well-informed decision. The trial court exhibited careful thought not only in its judgment entry, but also at one of the hearings when it posed a question to the prosecution about whether or not it was bound to enter judgment in accordance with the experts' conclusions. After the court heard testimony from both experts, it even decided to further probe into the adaptive functioning prong by taking testimony from one of the SIB-R test's developers, Bradley Hill. Ultimately, the trial court issued a judgment that articulated objective bases for its decision and reasoning. See Lagway, 806 F.Supp. at 1340. This Court cannot usurp the trial court's role by substituting our own objective bases for those of the trial court.
 {¶ 22} While appellant also opines that the prosecution did not allow the experts to interview Kawczk directly, he does not provide any support for this accusation in the record; we also do not find support for this accusation. While Kawczk was not initially included as an informant in the administration of the SIB-R test, nothing in the record suggests that this was a result of prosecution opposition to her inclusion. Furthermore, both parties had an equal opportunity to examine Kawczk during the hearing, and Dr. Hammer used her testimony at the hearing, reviewed the scores on the SIB-R, incorporated the information, and readjusted the SIB-R score based on her testimony.
 {¶ 23} Based upon the foregoing, this Court finds that the trial court did not abuse its discretion in finding that appellant had failed to meet his burden on the second prong of the Lott standard (adaptive skills deficits), based upon the evidence before it. Because we have made this determination, it is not necessary for us to assess the trial court's determination with respect to the third prong, manifestation before the age of 18, at this time. See Lott at ¶ 12. Therefore, this Court cannot say that the trial court's judgment evidenced an arbitrary, unreasonable, or unconscionable attitude. SeeStallings at ¶ 5; Blakemore, 5 Ohio St.3d at 219. Accordingly, we find that the trial court did not abuse its discretion in finding that appellant had not met his burden of establishing mental retardation. Appellant's first assignment of error is overruled.
 SECOND ASSIGNMENT OF ERROR
"THE TRIAL COURT ERRED IN RELYING ON LAY WITNESS TESTIMONY IN DETERMINING THAT WHITE WAS NOT MENTALLY RETARDED UNDER STATE V.LOTT, 97 OHIO ST.3D 303, 779 N.E.2D 1011, 2002-OHIO-6625."
 {¶ 24} In his second assignment of error, appellant contends that the trial court erred when it relied upon lay witness testimony in determining that appellant was not mentally retarded under the Lott standard. This Court disagrees.
 {¶ 25} Appellant argues that to be considered at the hearing, Kawczk's information should have been included as a part of the experts' respective evaluations, but that the prosecution presented her testimony outside of this arrangement. Appellee maintains that appellant failed to preserve this issue for the purposes of appeal and therefore has forfeited the opportunity to raise it as an assigned error on appeal. Specifically, appellee argues that appellant is essentially challenging the trial court's denial of his motion in limine in which he sought to exclude Kawczk's testimony, but that appellant failed to renew his objection to Kawczk's testimony at trial.
 {¶ 26} A ruling on a motion in limine is an interlocutory ruling as to the potential admissibility of evidence at trial and cannot serve as the basis for reviewing error on appeal. Statev. Grubb (1986), 28 Ohio St.3d 199, 201-02. Since a ruling on a motion in limine is only preliminary, an objection to such evidence must be raised once the evidentiary issue is presented during trial in order to properly preserve the question for appeal and to avoid a forfeiture of such a challenge. State v.Maurer (1984), 15 Ohio St.3d 239, 259-60.
 {¶ 27} Both experts' reports were ordered to be submitted to the trial court by November 14, 2003. The evidentiary hearing was scheduled to begin December 10, 2003. On December 8, 2003, the State filed its response to appellant's motion for disclosure of witnesses, giving notice that it intended to call appellant's ex-girlfriend and daughter of one of the victims in this case, Heather Kawczk, as a witness at the hearing. In the response, the State also noted that Kawczk was interviewed at the Summit County Prosecuting Attorney's office on December 5, 2003 by appellant's counsel.
 {¶ 28} On the same day, appellant's counsel filed a motion in limine to exclude Kawczk as a witness at the hearing, arguing that the State's attempt to bring her in as a witness at that point violated the court's July 2, 2003, scheduling order which provided that "[a]ny further procedures for evaluating Petitioner for mental retardation, including, but not limited to, contacting family members or friends for anecdotal evidence of adaptive behavior or lack thereof, is to be coordinated between Dr. Hammer and Dr. Fabian."
 {¶ 29} At the December 10, 2004 hearing, the court initially heard arguments on the motion in limine. The court noted at the December 10, 2004 meeting that the State had notified the court on the record at a prior hearing of its intent to call Kawczk as a witness. The court overruled the defense's motion, and Kawczk was put on the stand at the hearing. However, defense counsel did not object to the presentation of her testimony. In fact, when asked by the trial judge whether he consented to the State's calling of Kawczk as the first witness, defense counsel stated that he did and further noted,
"Having both on and off the record been granted the opportunity by the Court to air out this question of the admissibility of Miss Kawczk's testimony, we have made the decision that, having lost our motion, it's in Mr. White's interests to permit the State to offer out of order the lay testimony in the presence of one of the experts with the — in order to fully engage the issue."
Additionally, defense counsel not only interviewed Kawczk at the prosecutor's office, but also cross-examined her while on the stand at the hearing. We interpret these actions and comments, in the aggregate, at the least as a forfeiture of the issue, and at most, as an implied consent to Kawczk testifying in general.
 {¶ 30} Furthermore, this Court's determination in the first assignment of error essentially determines the second assignment of error, to the extent that it condoned and found proper the court's reliance on Kawczk's testimony.
 {¶ 31} Based upon the foregoing, appellant's second assignment of error is overruled.
 III. {¶ 32} Appellant's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to appellant.
Exceptions.
Slaby, P.J. Moore, J. Concur.
[1] Appellant had appealed to this Court, but in a journal entry dated April 9, 1997, we dismissed the appeal for want of jurisdiction. State v. White (Apr. 9, 1997), 9th Dist. No. 18228, journal entry.
[2] Dr. Eisenberg had administered part of the Minnesota Multiphasic Personality Inventory II ("MMPI II"), but could not get a valid result because he believed that appellant could not understand the questions; he felt this supported a retardation diagnosis. Dr. Eisenberg also administered the verbal portion of the Wechsler Adult Intelligence Scale Revised ("WAIS-R"), which he concluded also supported the diagnosis. However, Dr. Ben-Porath had testified that the verbal portion test result would tend to understate appellant's intelligence level. Statev. White (1999), 85 Ohio St.3d 433, 456.
[3] In the instant case, the trial court noted in its judgment entry that the AAMR published an updated version of the second prong in 2002, which regrouped the subtopics into three categories: 1) conceptual adaptive skills; 2) social adaptive skills; and 3) practical adaptive skills. The AAMR's position provides that a significant deficit in only one of these three categories would satisfy the second prong. While acknowledging its standing obligation to abide by the Lott standard, the court also made note of the Ohio legislature's mandate that "mental retardation" be governed by the most current revision published by the AAMR. R.C. 5123.01(Q). In either event, both experts described the update as a "distinction without a difference — a mere rearranging of the multiple concepts into three categories," as explained by the trial court, and both experts concluded that appellant met both definitions.
[4] The SIB-R manual, portions of which were admitted as exhibits during Bradley Hill's testimony, explains, "[a] primary use of the SIB-R is to identify individuals who lack adaptive, functional independence in particular settings . . . to evaluate level of adaptive behavior functioning and other measures in relationship to level of intelligence test performance."
[5] Although the trial court does not recount so in its judgment, it may be significant that several of appellant's relatives who were used as informants were themselves considered potentially to be of lower intelligence.